Dean, Adams & Gaff (W. C. Swanson, Intervenor), v. Martin & Case.

No. 2456.—DEAN, ADAMS & GAFF (W. C. SWANSON, Intervenor), v.
MARTIN & CASE.

A party who has contracted with another on an immoral basis, or has made a contract
which is reprobated by law, can not, after it has been executed, obtain relief from its
effects through the action of the courts.

One who has induced others to buy a lot of cotton from a third person, by representing that
such third person was the owner thereof, is thereafter estopped from setting up any
claim thereto on his own account.

APPEAL from the Fourth District Court, parish of Orleans. *Théard*, J.
*E. Wooldridge*, for plaintiffs and appellants. *Breaux & Fenner*,
for intervenor. *R. & H. Marr*, for defendants and appellees.

LUDELING, C. J. The plaintiffs are holders and owners of a draft
or order drawn by Brummel, dated May 7, 1866, directing the defend-
ants to pay plaintiffs or order the proceeds of twenty bales of cotton
then held by defendants for account of Brummel. When this order
was presented for payment the defendants wrote the following ac-
knowledgment on the back of the order:

"We have a bill of sale of twenty bales made to A. T. Hawthorn,
for the benefit of A. O. Brummel, providing that the net proceeds of
twenty bales average cotton be paid to the said A. O. Brummel when
sold, less sixty dollars. New Orleans, May 7, 1866."

The twenty bales of cotton were sold by the defendants, and realized
the net sum of $1080. The defendants refused to pay plaintiffs, on the
ground that they had been ordered by Swanson not to pay the same.
In their answer they admit they hold the proceeds of the sale of the
cotton, but they aver that, inasmuch as Swanson and others claim
them, they call upon all the other parties to interplead, and they pray
that the court may say to whom the money shall be paid. Swanson
alone filed an intervention. He avers that he was the owner of 141
bales of cotton; that the cotton was seized by A. O. Brummel, who
represented himself as an agent of the Treasury Department of the
United States; that Brummel had a file of soldiers with him, and that
he was prevented from shipping his cotton until he entered into the
following agreement:

"BOWIS COUNTY, TEXAS, March 23, 1866.

Know all men by these presents that I have this day bargained and
sold to A. T. Hawthorn twenty bales of cotton, to be averaged out of
one hundred and forty-one bales shipped on steamer Carrie Poole.
The net proceeds of said twenty bales average to be paid by said
Hawthorn to A. O. Brummel, provided there is no seizure or detention
of said one hundred and forty-one bales cotton by the Government of
the United States or its agents, or, in the event of seizure or detention
as aforesaid, the proceeds of said twenty bales to be paid to said
Brummel, provided said one hundred and forty-one bales are released
and permitted to be sold without any additional expense.

(Signed)                                             W. C. SWANSON."

And the cotton was released from seizure and shipped to the defendants, A. T. Hawthorn being at the time one of the firm of which defendants are the successors.

Some time after this one Oliver asked Swanson if the sale of the twenty bales of cotton to Brummel would be all right. "He said he guessed it would; that it was a swindling transaction all round, and that he thought he had got off cheap enough anyhow. This was before I bought of Brummel. I got Brummel to give the order to Dean, Adams & Gaff." He further says: "They advanced me $1200 on the order."

We think Swanson is estopped from denying the sale to Brummel, for by his declarations to Oliver he induced innocent parties to part with their money for the cotton under the impression that it belonged to Brummel.

We are also of opinion that the contract between Swanson and Brummel was an executed contract, and courts of justice will not give their aid to afford relief from the consequences of the immoral contract entered into by the parties.

It is therefore ordered and adjudged that the judgment of the district court be annulled, and that there be judgment in favor of the plaintiff and against the defendants for the sum of $1080, with five per cent. interest thereon from the first day of April, 1868, till paid, and for costs of both courts against the defendants and intervenor.

Rehearing refused.